UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA BAGDASARYAN,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:16-cv-02319 CKD<br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.[1]

BACKGROUND

Plaintiff, born April 4, 1979, applied on November 13, 2012 for SSI, alleging disability beginning July 31, 2011. Administrative Transcript ("AT") 184. Plaintiff alleged she was unable to work due to chest pain, fibromyalgia, sleep apnea, depression, degenerative disk disease,

---

[1] The parties have consented to magistrate judge jurisdiction. ECF Nos. 7 and 8.

1

degenerative joint disease, depression, anxiety, difficulty walking, panic attacks, chest pain, and headaches. AT 116. In a decision dated February 20, 2015, the ALJ determined that plaintiff was not disabled.[2] AT 20-29. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since July 31, 2011, the alleged onset date.
>
> 3. The claimant has the following severe impairments: affective disorder and anxiety disorder.

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: frequent interaction with the public, co-workers and supervisors.

6. The claimant is capable of performing past relevant work as a home attendant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from July 31, 2011, through the date of this decision.

AT 22-29.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly weighed the medical evidence; (2) the ALJ erred in failing to find that plaintiff suffered from severe physical impairments at Step Two; and (3) the ALJ improperly discounted plaintiff's testimony.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Medical Evidence

Plaintiff asserts that the ALJ failed to properly credit the opinions of her treating physician, Dr. Bass, with respect to her physical abilities and limitations. Plaintiff further asserts that the ALJ failed to credit Dr. Bass and two other physicians with respect to her mental limitations.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different

4

independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

### 1. Physical Limitations

In a July 2014 letter report to the ALJ, Dr. Bass stated that he had treated plaintiff for several years. AT 368. He cited "numerous medical problems, including spine degeneration, fibromyalgia, hypertension, hyperlipidemia, severe allergies, and trama-induced psychiatric symptoms." AT 368. As to physical impairments, Dr. Bass reported that plaintiff had "degenerative spine disease in the cervical, thoracic, and lumbar regions, as well as scoliosis." AT 369. He reported arthritis and neck and back pain, the latter stemming in part from a 2013 motor vehicle accident. AT 369. Dr. Bass also reported that plaintiff suffered pain in both knees, "vague, scattered pains associated with fibromyalgia," and tenderness in most joints. AT 369. Dr. Bass opined that plaintiff had the following functional limitations:

> She can walk or stand for 1 to 2 minutes or sit for 30 minutes before excessive pain. She could sit, stand, or walk 2-4 hours in total in an 8 hour period. She can lift less than 5 pounds occasionally, and should never lift over 10 pounds. She cannot do bending, squatting, kneeling, crawling, or climbing. . . . I consider her to be permanently disabled with a poor prognosis for return to normal.

AT 372; see also AT 314-316, 320-321, 363 (similar findings by Dr. Bass in 2013).

Assessing these opinions, the ALJ wrote:

> Dr. Michael P. Bass submitted multiple opinions regarding the claimant's physical limitations in functioning, which are given little weight. A finding of disability is an ultimate issue that is reserved to the Commissioner. Because the issue is reserved, Dr. Bass' opinion cannot be afforded controlling weight, but was nevertheless duly considered. As discussed directly above, the claimant has no severe physical impairments. There is no evidence that the claimant's medically determinable conditions of fibromyalgia, migraines or back pain cause more than minimal limitations in any

5

> area of functioning, including exertional, postural, or manipulative, given the lack of positive physical findings beyond tenderness, and conservative treatment with medication only, without specialist care or diagnostic radiology. Therefore, I give very little weight to Dr. Bass' physical opinions regarding the claimant's ability to function, and to his opinion that the claimant is permanently disabled with a poor prognosis.

AT 23-24.

Plaintiff asserts that the ALJ improperly discounted plaintiff's diagnoses of fibromyalgia, migraines, and back pain and associated limitations. Plaintiff cites multiple reports from Dr. Bass diagnosing plaintiff with fibromyalgia and noting associated symptoms, including fatigue, chronic pain, and tenderness over major muscle groups. See AT 312, 349-350, 370, 376, 378. Plaintiff was diagnosed with migraines at medical visits in 2012 and 2013, both times presenting with multiple complaints. AT 312, 350.

State agency physicians found that plaintiff's physical conditions were all non-severe. AT 24; see AT 89-96, 98-110. The ALJ gave these opinions "great weight." AT 24.

As to fibromyalgia, the ALJ stated that "the record does not indicate any treatment beyond medication," plaintiff had not seen a rheumatologist, and the condition was "well controlled with medication, and does not require specialist care." AT 22. See AT 104 (agency physician's 2013 note that "she really doesn't have much in the way of treatment"), AT 332 (examining physician's 2013 note that she had not seen a rheumatologist).[3] Plaintiff was treated with pain relievers, antidepressants, and anti-seizure drugs, and also received light massage in physical therapy. AT 347, 369. In October 2012 and January 2013 exams, plaintiff exhibited no tenderness and a normal range of motion. AT 282, 289. A 2013 physical examination found her to have normal muscle bulk and tone in all major muscle groups in the upper and lower extremities bilaterally, 5/5 strength in the upper and lower extremities bilaterally, and 5/5 grip strength bilaterally. AT 334.

////

---

[3] Plaintiff testified in November 2014 that she had been on a waitlist for two years to see a rheumatologist, as "the rheumatologist only sees limited people with Medi-Cal." AT 60. Per her alleged onset date, however, her fibromyalgia was debilitating as of July 2011.

6

Though she was diagnosed with migraines, the ALJ found that "the medical record does indicate any treatment for the condition" and found it non-severe, "causing no more than minimal limitations in ability to work." AT 23. Plaintiff notes that she was prescribed Ibuprofen, antidepressants and Norco, all used in the treatment of migraine headaches. See AT 73. She testified to having "very bad headaches" and migraines as a result of taking Nitroglycerin, which she discontinued. AT 55, 62. When asked by the ALJ to identify her "most important" physical problem because she complained of different problems at different times, plaintiff mentioned bone, joint, knee, and "all over pain" with no mention of headaches. AT 72-73. Aside from Dr. Bass, plaintiff cites no medical finding of significant limitations associated with her migraines.

As to back pain from spinal degeneration, the ALJ noted that plaintiff's physician did not order spinal x-rays, and that "examinations throughout the record stated that the claimant had normal range of motion," as in her 2013 consultative examination. AT 23; see AT 331-335. A December 2014 MRI found "a 2-3 mm, broad disc protrusion bulging into both neural foraminal exit zones" resulting in "borderline bilateral neural foraminal exit zone compromise without spinal stenosis." AT 385. Otherwise, its findings were largely unremarkable. AT 385. "On July 28, 2014, the claimant's physician for the first and only time noted that there was straight leg raising positive bilaterally. Even on that date, the claimant had normal range of motion in the spine." AT 24; see AT 368-372. The ALJ found that, as plaintiff's treatment for back pain had been conservative and she "has a high level of functioning," her back pain was non-severe, causing no more than minimal limitations in ability to work. AT 23. The ALJ described plaintiff's activities of daily living, including personal care, occasional driving, grocery shopping, and preparing meals. AT 24. The ALJ noted that plaintiff cared for her three children (ages 18, 16, and three) with help from family members.[4] AT 24. Aside from Dr. Bass, plaintiff cites no medical finding of significant limitations associated with back pain.

////

---

[4] See, e.g., AT 106 (claimant "drives shops, handles bills & money, & socializes with family. She occasionally attends church."); AT 326 ("claimant "is independent for basic ADL's and does not need help with preparing meals. Claimant is able to make change at the store. The claimant reportedly spends the day helping her children with light household chores.").

Based on the foregoing, the undersigned concludes that the ALJ provided specific and legitimate reasons for discounting Dr. Bass's findings of functional limitations based on fibromyalgia, migraines, and back pain, supported by substantial evidence including the State agency doctors' opinions. See Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.")

2. Mental Limitations

Plaintiff asserts that the ALJ improperly discounted opinions by Dr. Bass and two other physicians with respect to her mental limitations.

In 2013, Dr. Bass rated plaintiff's ability to deal with work stresses as "poor," but otherwise described her abilities to adjust to work as "fair." AT 318. He noted that she was "[d]istracted by physical pain. Poor concentration due to depression, sleep deprivation, pain syndromes, anxiety attacks. Has anxious and depressed affect. Poor memory." AT 318. He characterized plaintiff's dominant stressors as "work environment" and "[a]ny environment besides home (agoraphobic), authority figures." AT 318. Dr. Bass also described multiple limitations in plaintiff's mental capacities to engage in daily work, interact and communicate with coworkers, complete tasks, and adapt to work, citing depression, emotional lability, and problems with memory, concentration and energy. AT 319.

The ALJ considered Dr. Bass's mental health findings as follows:

> The extreme limitations opined by Dr. Bass is [sic] inconsistent with the evidence indicating no significant mental health care treatment, limited specifically to medication prescribed by a primary care physician only, as well as his own finding of no mental status findings, and is given little weight. However, I have provided for symptoms of depression and anxiety, as consistent with the record that the claimant was tearful at times and required medication treatment, and provided for the limitation of frequent interaction with the public, coworkers, and supervisors.

AT 28. The ALJ noted that "[i]n his sole mental status assessment contained in his opinion of July 28, 2014, Dr. Bass stated that the claimant had all normal mental status findings." AT 27-28; see AT 370. In that report, Dr. Bass noted "[n]ormal affect, and normal memory, speech, and calculations, by testing." AT 370.

8

Plaintiff argues that, while her mental conditions were treated only with medication over a period of several years, it was a "very aggressive medication regimen" of Lexapro, Abilify, Ambien, and Clonzapam. See AT 369. Plaintiff further argues that, due to poverty and limitations on Medi-Cal coverage, it was difficult to get therapy. See AT 66.

The ALJ also ascribed little weight to an opinion by psychologist Dr. Janet Phillips, who conducted a psychiatric evaluation of plaintiff on August 8, 2013 after reviewing her medical records. AT 324-328. Dr. Phillips diagnosed plaintiff with a mood disorder and assigned her a GAF of 60.[5] AT 327. In a mental health functional assessment, she found plaintiff "moderately limited" in the abilities to accept instructions from supervisors, interact with coworkers and the public, complete a normal workday, and handle work-related stress, "due to symptoms of depression and characterological traits." AT 328. Dr. Phillips found plaintiff "mildly limited" in other work-related functions. AT 328. The ALJ gave little weight to Dr. Phillips's opinions and GAF score, "as they are based on a single encounter with little findings supporting the severe limitations, and are inconsistent with evidence that the claimant's mental health conditions are generally controlled with medication prescribed by a primary care physician only." Furthermore, there were no significant mental status findings throughout the record. AT 28.

Lastly, the ALJ discounted certain 2013 findings of state agency medical consultant Dr. Jaine Foster-Valdez, who diagnosed plaintiff with "severe" affective disorders and anxiety disorders. AT 105. The ALJ noted Dr. Foster-Valdez's findings that plaintiff's mental conditions caused moderate limitations in the following areas: ability to complete a normal workday and workweek without interruptions from psychological symptoms and to perform at a consistent pace without frequent rest periods; ability to interact appropriately with the public; ability to accept instructions and respond appropriately to criticism from supervisors; and ability to get along with coworkers or peers. AT 28; see AT 105-110. The ALJ wrote:

---

[5] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers). Id.

> I give great weight to the opinion regarding social limitations, as it is consistent with the record that claimant was tearful at times and required medication treatment, and provided for the limitation of frequent interaction with the public, co-workers and supervisors. However, I give little weight to the adaptation and concentration, persistence and pace limitations, as they are inconsistent with the evidence that the claimant's treatment conditions are generally controlled with medication prescribed by a primary care physician only, and no significant mental status findings throughout the record.

AT 28.

Plaintiff asserts that her mental conditions were not well-controlled by medication, citing multiple subjective complaints of, e.g., depression and anxiety. AT 310, 312, 350, 375, 378. However, as discussed below, the ALJ supplied adequate reasons for discounting plaintiff's credibility. Putting aside plaintiff's own statements, her mental health findings were largely unremarkable, with even Dr. Bass finding her mental status normal, as noted above. See, e.g., AT 327 (in 2013 mental status examination, plaintiff was alert, fully oriented, cooperative, with fair intelligence, judgment, memory, concentration and adequate attention). The ALJ noted that Dr. Bass never referred her to a specialist for treatment of her anxiety and depression, and that he "continued to treat with the same medications without change since March 15, 2013," a fact suggesting this course of treatment was effective. AT 27.

Based on the foregoing, including the state agency physicians' opinions that plaintiff's impairments were non-severe, the undersigned concludes that the ALJ provided specific and legitimate reasons for discounting mental functional limitations greater than those reflected in the RFC, supported by substantial evidence.

B. Severe Impairments

Plaintiff asserts that the ALJ erred in failing to find that plaintiff suffered from severe physical impairments at step two of the evaluation. As above, plaintiff argues that her fibromyalgia, migraines, and back pain were severe impairments.

The Social Security Regulations "Listing of Impairments" is comprised of impairments to certain categories of body systems that are severe enough to preclude a person from performing gainful activity. Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. §

404.1520(d). Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the requirements of that listing must be met. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985). It is the disability claimant's burden of proving that his or her impairments meet or equal the required elements of a Listing. Tackett v. Apfel, 180 F. 3d 1094, 1099 (9th Cir. 1999).

To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to his claim. To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment. 20 C.F.R. § 404.1526. A finding of equivalence must be based on medical evidence only. 20 C.F.R. § 404.1529(d)(3). When an ALJ considers limitations resulting from an impairment in the RFC, any error in not considering the impairment to be severe is harmless. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

Here, plaintiff's argument relies on crediting Dr. Bass's opinions as to her physical impairments and limitations, discussed above. However, the court found that the ALJ properly discounted these opinions. Therefore, the court finds no error on this basis.

C. Credibility

Lastly, plaintiff argues that the ALJ erred in finding her not fully credible. In making this finding, the ALJ cited various inconsistencies in the record, including:

> inconsistent reports that she has a good ability to perform activities of daily living, which is greater than one would expect for a totally disabled individual. . . .
>
> A review of the claimant's work history shows that the claimant did not stop working due to her impairments, but because she was laid off. She testified at the hearing that she stopped working in 2011 not because of any impairment, but because the person she was caring for passed away.
>
> Finally, the claimant initially reported to the consultative examiner that she was not on parole or probation, but called the office later in the day to report that she was currently on probation. All of the inconsistencies call into question the claimant's subjective statements.

AT 26; see AT 48, 326.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ considered the objective medical evidence of plaintiff's claimed impairments and limitations, including failure to seek more aggressive treatment for allegedly

disabling impairments.  See AT 22 (fibromyalgia), AT 23 (migraines, carpal tunnel syndrome), AT 27 (anxiety disorder).  See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment).  The ALJ considered prior inconsistent statements, including an alleged disability onset date of July 2011, the same year plaintiff was working "seven days a week" as a home health care attendant until her job ended because the person she was caring for died.  AT 48.  The ALJ also considered plaintiff's daily activities, described above, which she found inconsistent with the claimed severity of plaintiff's limitations.  Because the ALJ used proper process and provided proper reasons for her adverse credibility finding, the undersigned defers to her discretion on this issue.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 23) is granted; and

3. Judgment is entered for the Commissioner.

Dated:  February 28, 2018

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 / bagdasaryan2319.ssi.ckd